# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 11, 2003 Session

## STATE OF TENNESSEE v. DAVID L. GROOM

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-T-364      Carol L. Soloman, Judge**

---

**No. M2002-00798-CCA-R3-CD - Filed March 27, 2003**

---

The defendant, David L. Groom, pled guilty to driving under the influence, reserving a certified question of law. On appeal, the defendant contends, pursuant to the certified question of law, that the trial court erred in denying his motion to suppress evidence resulting from an unlawful arrest or seizure. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Mark C. Scruggs, Nashville, Tennessee, for the appellant, David L. Groom.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Robert E. McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant pled guilty to driving under the influence, first offense. The trial court imposed a sentence of eleven months and twenty-nine days and ordered forty-eight hours to be served in incarceration with the balance served on probation. Pursuant to the plea agreement, the defendant properly reserved the following certified question of law:

> Whether the Defendant was [the] subject of an unlawful arrest and/or seizure by Metro police (in violation of his rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the Tennessee Constitution) on the evening of April 29, 2001, when he was required to wait at the scene of a minor property damage accident for at least 27 minutes until an officer could arrive to investigate the accident.

*See* Tenn. R. Crim. P. 37(b)(2)(i).

# I. SUPPRESSION HEARING

Officer Geoffrey Thied testified that on April 29, 2001, he was working for the Metro Police Department and AmSouth Amphitheater in a traffic control position and was officially on duty while working for AmSouth. He stated that at approximately 11:00 p.m., while directing traffic leaving a concert at the amphitheater, he heard screeching tires and "metal contact." He observed a white vehicle had struck a bluish-green vehicle. The officer stated he checked on the female occupants of the bluish-green vehicle, and they were not injured.

Officer Thied testified that when he approached the white vehicle, the defendant, the driver of the vehicle, rolled down his window, and the officer could smell the odor of alcohol emitting from inside the vehicle. The officer stated he obtained the license and registration of the driver of each vehicle. The officer told the defendant not to put anything in his mouth because he believed the defendant may have been drinking.

Officer Thied testified that while the occupants of the vehicles surveyed the damage, he contacted the dispatcher to report the accident and requested the presence of an investigating officer. The officer stated he radioed the dispatcher approximately three to five minutes after the accident occurred. He further stated Officer Timothy Reid arrived twenty-five to thirty minutes later. Officer Thied testified he handed Officer Reid the licenses and registrations he had collected. He told Officer Reid the white vehicle had struck the bluish-green vehicle, and he smelled alcohol on the defendant.

Officer Thied testified he did not administer field sobriety tests upon smelling the alcohol on the defendant because he had to direct traffic to ensure no one would strike the vehicles, which were located in a hazardous position. He explained a concert had just ended and described the traffic on the road as "medium to heavy." The officer opined it would have been too dangerous to conduct the field sobriety tests during that time due to the high level of traffic.

Officer Timothy Reid testified he received information from the dispatcher regarding a vehicle accident without injuries and responded to the scene. Officer Reid testified that according to the accident report, the accident occurred at approximately 11:08 p.m., and he arrived at the scene at approximately 11:35 p.m. Officer Reid testified that upon arriving at the scene of the accident, he spoke to the parties, and the defendant admitted he was driving the white vehicle. The officer observed that the defendant's eyes were watery and bloodshot, and his speech was slurred. He further stated the defendant had to brace himself against his vehicle to maintain his balance. The officer believed the defendant was intoxicated and instructed the defendant to sit in the back of his patrol car while he obtained everyone's information and began the accident report. After the defendant admitted he had a few beers earlier that night, Officer Reid administered field sobriety tests, which the defendant failed. The defendant then submitted to a breath alcohol test and registered a blood alcohol level of .17%.

Debbie Margotta testified she was a passenger in the defendant's vehicle when the accident occurred. Margotta testified she and the defendant exited the vehicle and exchanged license, registration, and insurance information with the occupants of the other vehicle.

The defendant testified that after the concert ended, he drove out of the parking lot and hit the back of the other vehicle while changing lanes. He stated that after the accident, a uniformed officer, who was standing in the middle of the road approximately forty to fifty yards away, yelled at the parties to stay where they were.

The defendant testified he exited his vehicle and observed no damage to his vehicle. He then checked on the occupants of the other vehicle, who were uninjured. The defendant stated Margotta gave the other driver his insurance card, and he exchanged telephone numbers and insurance information with the other driver. He further stated another officer subsequently arrived to investigate the accident.

The defendant and the state stipulated to the testimony of Melanie Hicks, the driver of the other vehicle involved in the accident. In a written statement, Hicks stated she was rear-ended by a vehicle driven by the defendant, who then gave her his name, address, license information, and insurance information. She explained she wanted to wait for the police to make an accident report. Hicks estimated the accident caused "approximately $500.00" damage to her vehicle.

## II. TRIAL COURT'S FINDINGS

The trial court found that Metro Police Officer Thied, while directing traffic at a concert that had just ended, heard the noise from the accident; he approached the vehicles and smelled the odor of alcohol coming from the defendant's vehicle; and he told the parties to remain on the scene until another officer arrived to investigate. The trial court found Officer Thied then called the dispatcher and reported the accident, and another officer arrived approximately twenty-seven minutes after the accident occurred.

In denying the defendant's motion to suppress, the trial court found the defendant was properly required to remain at the scene of the accident until an investigating officer arrived. It stated the odor of alcohol emitting from the defendant's vehicle gave Officer Thied cause to require the defendant to remain at the scene until Officer Reid arrived to investigate. Finally, the trial court concluded the twenty-seven minutes, which the defendant was required to wait for an investigating officer to arrive, was not an unreasonable amount of time.

## III. STANDARD OF REVIEW

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, this court is not bound by the trial court's conclusions of law. State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000).

## IV. ANALYSIS

The defendant contends the twenty-seven minute delay between the occurrence of the accident and the arrival of the investigating officer amounted to an illegal arrest or seizure. We disagree.

### A. Detention for DUI Investigation

A policeman may make an investigatory stop when the officer has a reasonable suspicion, supported by articulable and specific facts, that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968); *see also* United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002); Randolph, 74 S.W.3d at 334. Detention of the person subject to the investigatory stop must last no longer than necessary to effectuate the purpose of the stop. State v. Troxell, 78 S.W.3d 866, 871 (Tenn. 2002). The officer must employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). The proper inquiry is whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. State v. Simpson, 968 S.W.2d 776, 783 (Tenn. 1998).

We first note that Officer Thied's initial encounter with the defendant was not the result of an investigatory stop. The defendant had been involved in an accident, and the officer merely approached the defendant while the defendant was in his vehicle. However, once the officer told the defendant to stay at the scene, the defendant was "seized" for purposes of constitutional analysis. *See* Terry, 392 U.S. at 19 n.16; Daniel, 12 S.W.3d at 424-25. Thus, the issue is whether the defendant was unreasonably detained for the twenty-seven minutes before the investigating officer arrived.

In the case at bar, Officer Thied testified he heard the accident as it occurred and immediately responded to the scene to determine whether anyone was injured. He stated that upon approaching the defendant's vehicle, he smelled the odor of alcohol emitting from inside the vehicle. Upon smelling the alcohol, the officer had the right to briefly detain the defendant at the scene and administer field sobriety tests or otherwise ascertain the defendant's state of sobriety. *See* State v. Yeargan, 958 S.W.2d 626, 633 (Tenn. 1997).

Officer Thied did not administer field sobriety tests to the defendant at that time. Instead, he called the dispatcher, requested the presence of an investigating officer, and then directed traffic leaving the concert. Officer Thied testified the accident occurred in a hazardous area of the road where other motorists were at risk of hitting the vehicles. He further explained that due to the high level of traffic, administration of field sobriety tests during that time would have been too dangerous. Furthermore, there is no indication in the record that Officer Reid, deliberately or otherwise, took an unreasonable amount of time to get to the accident site.

We conclude that under the circumstances, the officer diligently pursued a means of investigating his suspicions regarding the defendant's intoxication. Officer Thied did not

-4-

immediately administer field sobriety tests; rather, he chose to perform a public safety function by directing traffic. Further, due to the high level of traffic, administration of field sobriety tests at that time could have endangered the safety of the officer, the defendant, and other motorists. Under the circumstances, requiring the defendant to wait twenty-seven minutes for an investigating officer to arrive was not unreasonable and was not an illegal arrest or seizure.

Once Officer Reid arrived and observed the defendant's signs of intoxication, the officer had appropriate reasonable suspicion to detain the defendant for field sobriety tests. When the defendant performed poorly, the officer had probable cause to arrest the defendant. The defendant was not illegally seized.

## B. Detention for Traffic Violation

We conclude there was yet another basis for the defendant's detention prior to Officer Reid's arrival, irrespective of reasonable suspicion for driving under the influence.

According to the proof, the defendant rear-ended the other vehicle. Thus, the officer had, at the very least, a reasonable suspicion that the defendant committed a traffic violation. *See* Tenn. Code Ann. § 55-8-124(a) (following too closely). The officer could, therefore, briefly detain the defendant to investigate the accident and determine whether a traffic violation had occurred. *See* Troxell, 78 S.W.3d at 871. It is irrelevant whether Officer Thied was subjectively aware of or intended to cite the defendant for this violation. *See* Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); State v. Vineyard, 958 S.W.2d 730, 736 (Tenn. 1997). The detention can be no longer than is necessary to effectuate the purpose of the detention. Troxell, 78 S.W.3d at 871. As we have already stated, the twenty-seven minutes the defendant was required to wait for the investigating officer was reasonable in light of all the facts and circumstances.

Because we have determined that the detention was proper based upon reasonable suspicion for DUI and following too closely, we need not determine whether the defendant was unlawfully detained in order for the officers to obtain the necessary information to complete an accident report.

We affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE

-5-